# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

**SHELLY L. MILTON,**

  Plaintiffs

v.

**WAYNE COUNTY and
ROBERT DUNLAP,**

  Defendants

Hon. Paul D. Borman
Magistrate Mona K. Majzoub
Case No:   16-cv-14033

_____/

**BOYLANLAW, P.C.**
By:    Karie H. Boylan (P55468)
Attorney for Plaintiffs
410 W. University, Suite 201
Rochester, Michigan   48307
Phone:        (855) 926-9526
Fax:            (855) 326-9526
E-Mail:        karie@boylanlaw.net

**WAYNE COUNTY CORPORATION COUNSEL**
By:    Cheryl Yapo
Attorneys for Defendants
500 Griswold, 30th Floor
Detroit, Michigan   48226
Phone:        (313) 224-8719
Fax:            (3131) 224-4882
E-Mail:        cyapo@waynecounty.com

_____/

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff states:

1

## JURISDICTION AND PARTIES

1.   This is an action for sex discrimination (harassment, hostile work environment and retaliation) actionable under the Michigan Elliott-Larsen Civil Rights Act, MCL 27.2101 et seq. First Amendment Retaliation actionable under 42 U.S.C. § 1983, retaliation actionable under the Michigan Whistleblowers' Protection Act, MCL 15.361 et seq., and Intentional Infliction of Emotional Distress.

2.   All parties reside in Wayne County.

3.   All events giving rise to litigation occurred in Wayne County.

4.   Defendant Dunlap is being sued in his individual and official capacities.

5.   Defendant Wayne County is a Michigan Municipal Corporation.

6.   The Wayne County Sheriff is elected to the position.

7.   The Sheriff's Office is an operational subunit of Wayne County and a paramilitary organization with a $144,143,656.00 operating budget (fiscal year 2015-2016).   The Sheriff's Office, alone, employs more than five hundred (500) individuals.   Its highest ranking positions, in order of priority, are:   Sheriff, Undersheriff, Chief, Deputy Chief.  Its lowest ranking position is Deputy.

8.   All parties are Wayne County employees assigned to the Sheriff's Office.

9.   Lacey L. Polderdyke is a Sheriff's Deputy.

10.   Plaintiff Shelly L. Milton is a Sheriff's Deputy.

11.   Michael Turner is the Sheriff's Chief of Staff.

12.     Defendant Robert Dunlap is the Sheriff's Chief of Jails and Courts.

13.     Rafael Washington is the Sheriff's Deputy Chief of Courts.

14.     Defendant Dunlap is a Sheriff's Office policy maker with supervisory control over Deputy Milton.  All decisions affecting her as described below were made by Defendant Dunlap, ratified by Sheriff Napoleon and Undersheriff Pfannes.

## BACKGROUND FACTS

15.     Deputy Milton was hired by Wayne County in 1998.

16.     Sheriff Napoleon is a Democrat.  Defendant Dunlap, Raphael Washington and Michael Turner are political appointees.

17.     Deputy Milton campaigned to be the elected Wayne County Sheriff more than once.  Prior to 2015, she ran as a Republican.   In 2015, she switched political parties and became a Democrat.  After that, she campaigned for Sheriff on the Democratic ticket – along with Sheriff Napoleon.

18.     Sometime in 2015, Deputy Milton saw Sheriff Napoleon at a Sheriff's Office function.  Sheriff Napoleon asked Deputy Milton:  "Will I be seeing you next November?" [as a candidate for Sheriff in 2016].  She smiled and said:  "Yes".

19.     After that encounter, Deputy Milton met Defendant Dunlap for the first time.  They both extended their hands at the same time to shake hands.  Deputy Milton said first:  "Hi, I'm Shelly Milton".  Defendant Dunlap withdrew his hand before shaking hers and said in a menacing tone:  "Oh, I know all about *you*!".

3

20.    For twelve years before she announced she was a Democrat running for Sheriff in direct opposition (i.e., same political party) to Sheriff Napoleon, Deputy Milton had been very active in the Sheriff's Office Training Unit, both administratively and instructing basic and advanced classes to Sheriff employees.

21.    Prior to her becoming a Democrat, the Training Unit Commanding Officer's requests to have Deputy Milton temporarily assigned to the Training Unit for administrative work and/or teaching had never been denied.

22.    Defendant Dunlap is the Sheriff's Office decision maker when it comes to approving or denying the Training Unit requests for classes and instructors, of course with the Sheriff and Undersheriff having oversight and veto power.

23.    After Deputy Milton switched political parties and announced her candidacy on the same "ticket" as Sheriff Napoleon, Defendant Dunlap issued a direct Order to Lieutenant Fredryn Allen (in charge of the Sheriff's Office Training Unit) that Deputy Milton was not to serve as a training officer and was not to assist in any administrative capacity in the Training Unit.

24.    After Deputy Milton switched political parties, all of Lt. Allen's requests to have Deputy Milton assigned to the Training Unit have been denied.

25.    Sheriff Napoleon was reelected to Sheriff in 2016.

26.    Since the 2016 election ended, Defendant Dunlap continues to deny requests for Deputy Milton to be temporarily reassigned to the Training Unit.

4

27.     Deputies Polderdyke and Milton are members of the Wayne County Sheriff's Office Honor Guard.

28.     In 2016, Deputy Polderdyke was the subject of another round of Defendants' discriminatory conduct because of gender.  She was the prior victim of Michael Turner's sex discrimination, who later apologized for his unlawful behavior.

29.     In the spring of 2016, Defendant Dunlap, the Sheriff, Undersheriff Chiefs and Deputy Chiefs became aware of the fact that Deputy Polderdyke had saved a text message she received from Raphael Washington.  In the message, he offered her a favorable term/condition of employment in exchange for sexual favors.

30.     When Raphael Washington found out she saved the text, he said to her: "You need to make it go away", or words to that effect.

31.     When Deputy Chief found out she saved the text, he said to her: "Don't do anything stupid with it, we'll take care of you", or words to that effect.

32.     When Undersheriff Pfannes found out she saved the text, it is rumored he spontaneously replied:  "That's the third strike for Washington".

33.     When Defendant Dunlap found out Sheriff Napoleon and Undersheriff Pfannes knew she saved the text, Dunlap chastised the individual whom he thought told the Sheriff by saying:  "You should have kept your mouth shut, we were taking care of it", or words to that effect.

34.     Deputy Polderdyke denied she saved the text, for fear of retaliation.

35.    In July of 2016, Deputy Polderdyke learned she would be responsible for coordinating slain Dallas Police Officer Michael Kroll's funeral.  In preparation, there were several meetings with representatives from public and private agencies.

36.    Defendant Dunlap and Raphael Washington attended several of the meetings though they were not involved in the event itself or its planning.

37.    At the July 12 and 13, 2016 meetings, Defendant Dunlap ordered Deputy Polderdyke out of her chair (situated across the room) and into a chair in between him and Raphael Washington.  Sometimes, Raphael Washington would move his chair so close to Deputy Polderdyke's that they were almost touching.  She repeatedly moved away.  No other Sheriff's Office representative was ordered to switch seats.  Raphael Washington never sat so close to anyone else.

38.    On July 15, 2016, Defendant Dunlap and Raphael Washington attempted to physical intimidate Deputy Polderdyke in retaliation for her saving the text message.  Her failure to succumb to that intimidation infuriated Defendant.

39.    After the meeting, Defendant Dunlap and Raphael Washington confronted Deputy Polderdyke in hallway and began berating her about having a "negative attitude" and not being a "team player".

40.    Several eyewitnesses wrote letters to the Sheriff complaining of the manner in which Defendant Dunlap and Raphael Washington interrupted the preparatory meetings and mistreated Deputy Polderdyke.

41.     On July 16, 2016, when she arrived for Honor Guard duty, Deputy Polderdyke was advised by a representative of Signature Flight Services that, due to Defendant Dunlap's inappropriate, counterproductive, and disruptive behavior, he would not be allowed into the Airport Operations Area (AOA/tarmac) for the arrival of Officer Krol's remains and family or any other funeral related detail.

42.     Defendant Dunlap arrived but was shut out of the detail.

43.     A short time later, when Deputy Milton arrived for Honor Guard detail, Defendant Dunlap was furious with Deputy Polderdyke for the text, furious with her for making him look so bad (by comparison).  Defendant Dunlap saw Deputy Milton and he was instantly reminded of her switching parties to run directly against the Sheriff, her opposition to the Sheriff's Office's discriminatory/retaliatory practices, her supporting Deputy Polderdyke's saving text messages and more.  Unable to control himself, he made another public spectacle of himself by confronting Deputy Milton in the hallway shouting:  "Stand Down!", "Strip out of that uniform!" and more.  He, himself, "stood down" once he realized she was off duty.

44.     Defendant Dunlap's conduct was so disruptive that he was ordered off Signature Flight Service property and escorted to his car by uniformed officers.

45.     When asked to explain his decisions affecting Deputy Milton and his treatment of her at Signature Flight Services, Defendant Dunlap is rumored to have said: "Don't you understand?  She's running *against **us***!".

46.     Defendant's conduct alleged herein has always been intentional.

47.     Defendants routinely discriminate against Sheriff's Office employees because of sex, engage in sexual harassment, and verbal/physical conduct or communications of a sexual nature under unlawful circumstances.

48.     Defendants routinely deprive Sheriff Office employees of rights under the First Amendment to the United States Constitution.

49.     Sheriff Office employees who report or oppose Defendants' unlawful conduct are retaliated against.  Those who support or conceal it are rewarded.

50.     On July 20, 2016, Deputy Milton filed an internal complaint with Wayne County Human Resources regarding Defendants' treatment of her.  No one from the Personnel Department, the Sheriff's Office, or Corporation Counsel did _anything_ to investigate her complaint.

51.     After her complaint sat dormant for months, Deputy Milton retained the undersigned attorney who sent notice to Wayne County Corporation Counsel and Sheriff Napoleon of Deputy Milton's intent to pursue a claim and/or cause of action for discrimination and retaliation.

52.     Defendants responded by sending Deputy Milton notice she was to report to a private attorney's office and be interviewed by him.  She was advised in no uncertain terms that she would be fired if she did not answer all of his questions. The notice purported to give the attorney full authority as if he were the Sheriff.

53.     At the beginning of the attorney's interview, he read her "Garrity Rights", which meant she was being investigated and not the Defendants.

### Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq

### Count I:  Hostile Environment Harassment

### Count II:  Retaliatory Harassment

54.     Plaintiff incorporates the preceding paragraphs by reference.

55.     Plaintiff was an employee, and Defendants were employers, covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101 et seq.

56.     Submission to discriminatory conduct or communications is a term or condition of employment in the Wayne County Sheriff's Office.

57.     Submission to/rejection of discriminatory conduct or communications by an individual is used as a factor in decisions affecting an individual's employment in the Wayne County Sheriff's Office.

58.     The discriminatory conduct or communications has the purpose or effect of substantially interfering with an individual's employment in the Wayne County Sheriff's Office.

59.     Defendants are aware of the fact that Deputy Milton has consistently opposed Defendants' discriminatory and retaliatory harassment of female Sheriff's Office employees, including but not limited to Deputy Polderdyke.

9

60.     Defendant Dunlap's motive, in whole or in part, for confronting Deputy Milton on July 16, 2016, was because of gender and in retaliation for her opposition of the Sheriff Office's discriminatory and retaliatory practices, including her support of Deputy Polderdyke.

61.     Defendants' motive in retaining a private attorney, sending Deputy Milton notice in the manner in which it was phrased, threatening her with termination, reading her Garrity Rights before questioning began, and the manner in which the interview was conducted constitutes retaliation and was specifically designed to intimidate her into backing down/withdrawing her complaint to Human Resources and support of Deputy Polderdyke.

62.     The aforementioned conduct constitutes hostile environment and retaliatory harassment in violation of the ELCRA.

63.     As a direct and proximate result of the Defendants' unlawful actions against Deputy Milton as described, Deputy Milton suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and esteem in the community; mental and emotional distress; pain and suffering; loss of the ordinary pleasures of life; costs of litigation, including costs, attorney fees and witness fees.

## Count III – Whistleblowers' Protection Act, MCL 15.361 et seq

64.     Plaintiff incorporates the preceding paragraphs by reference.

65.     Plaintiff was an employee, and Defendants were employers, covered by and within the meaning of the Michigan Whistleblowers' Protection Act, ("WPA"), MCL 15.361 et seq.

66.     On July 20, 2016, Deputy Milton reported, in writing, a violation or suspected violation of a law or regulation or rule promulgated pursuant to law of this state, of Wayne County, and of the United States to a public body.

67.     Defendants did nothing to investigate her complaint.

68.     On September 19th, 2016, the undersigned attorney sent notice and retention/reservation letters to Wayne County Corporation Counsel and Sheriff

69.     Defendants' motive in retaining a private attorney, sending Deputy Milton notice in the manner in which it was phrased, threatening her with termination, reading her "Garrity Rights" before questioning began; and, the manner in which the interview was conducted constitutes discrimination and retaliation in violation of Michigan's WPA.

70.     As a direct and proximate result of the Defendants' unlawful actions against Deputy Milton as described, Deputy Milton suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and esteem in the community; mental and emotional distress; pain and suffering; loss of the ordinary pleasures of life; costs of litigation, including costs, attorney fees and witness fees.

## <u>Count IV – First Amendment Deprivations</u>

71.     The preceding paragraphs are incorporated by reference.

72.     Political party affiliation is an expression of political beliefs, expression of those beliefs and, obviously, political affiliation.  They are fundamental rights protected by the First Amendment to the United States Constitution.

73.     Changing political parties; opposing discriminatory and retaliatory employment practices; speaking on matter of public concern is protected conduct; reporting violations or suspected violations of law is protected conduct; being denied opportunities to participate in training exercises and assist with administrative tasks in the Wayne County Sheriff Office's Training Unit; being publicly humiliated and yelled at in front of others during a solemn funeral detail; and, being threatened with termination in a notice to appear for an investigation into matters reported by the subject of the investigation, being read "Garrity rights" at the beginning of an interview that interviewee had requested, being threatened with termination for failure to answer any and all questions posed by a civilian as if he were the Sheriff, and being subjected to an intimidating interview constitutes adverse actions.

74.     Deputy Milton's participation in protected conduct were substantial or motivating factors behind the adverse actions taken against her.

75.     Defendants were acting under color of law at all relevant times and abused their authority.

76.     The individual Defendants' conduct violated clearly established statutory and/or constitutional rights of which a reasonable person would have known.  They are either plainly incompetent or knowingly violated the law.

77.     The individual Defendants are not entitled to qualified immunity.

78.     Wayne County is a "person" within the meaning of 42 U.S.C. § 1983.

79.     The adverse actions taken against Deputy Milton were expressions of the official policy of Defendant Wayne County and the moving force behind the First Amendment deprivations she suffered.

80.     In his official capacity, Sheriff Napoleon's failure to discipline/supervise Defendant Dunlap, and ratification of their unconstitutional conduct as outlined above constitutes ratification and Wayne County's official policy.

81.     Defendants' conduct is actionable under 42 U.S.C. §1983.

82.     Plaintiff is entitled to attorney/expert fees under 42 U.S.C. §1988.

83.     As a direct and proximate result of Defendants', individually and collectively, unconstitutional conduct, Deputy Milton suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and esteem in the community; mental and emotional distress; pain and suffering; loss of the ordinary pleasures of life; costs of litigation, including costs, attorney fees and witness fees.

### **Count V:  Intentional Infliction of Emotional Distress**

13

84.   The preceding paragraphs are incorporated by reference.

85.   Defendants Dunlap's conduct and interactions with Deputy Milton was intentional and resulted in her suffering extreme emotional distress.

86.   The conduct was extreme and outrageous, not to be tolerated in a civilized society.  So much so on July 16, 2016, that he was escorted off the property by uniformed law enforcement officers.

87.   As a direct and proximate result of Defendant Dunlap's conduct, Deputy Milton suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and esteem in the community; mental and emotional distress; loss of the ordinary pleasures of life; costs of litigation, including costs, attorney fees and witness fees.

WHEREFORE, Plaintiff request judgment against Defendants as follows:

1.   Legal relief
   a.   Compensatory damages in whatever amount she is found to be entitled;
   b.   Punitive/Exemplary damages in whatever amount she is found to be entitled;
   c.   Judgment for lost wages, past and future, in whatever amount she is found to be entitled; and
   d.   An award of interest, costs, and reasonable attorney fees.
2.   Equitable relief
   a.   An order allowing Plaintiff to participate in training and administrative tasks in the Wayne County Sheriff's Office Training Unit as she had before she changed political parties;
   b.   An injunction prohibiting any further acts of retaliation or discrimination; and
   c.   Whatever other equitable relief appears appropriate at the time of final judgment.

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

/s/ Karie H. Boylan
**BOYLANLAW, P.C.**
By:    Karie H. Boylan (P55468)
Attorney for Plaintiffs
410 W. University, Suite 201
Rochester, Michigan   48307
Phone:        (855) 926-9526
Fax:          (855) 326-9526

Date: March 5, 2017

15