## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SHELLY L. MILTON,                              CASE NO: 2:16-CV-14033-PDB-MKM

     **Plaintiffs,**                                 **HONORABLE PAUL D. BORMAN**

V                                              **MAGISTRATE MONA K. MAJZOUB**

WAYNE COUNTY
and ROBERT DUNLAP,

**Defendants.**

_____/

| | |
|---|---|
| **BOYLAN LAW, P.C.**<br>By:  Karie H. Boylan (P55468)<br>Attorney for Plaintiff<br>410 W. University, Suite 201<br>Rochester, Michigan 48307<br>Phone:  (855) 926-9526<br>Fax:  (855) 326-9526<br>E-Mail: karie@boylanlaw.net | **WAYNE COUNTY CORPORATION COUNSEL**<br>By:  Cheryl Yapo (P55682)<br>Attorneys for Defendant<br>500 Griswold, 30th Floor<br>Detroit, Michigan 48226<br>Phone:  (313) 224-8719<br>Fax:  (313) 224-4882<br>E-Mail:  cyapo@waynecounty.com |

_____/

## DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT, AFFIRMATIVE AND OTHER SPECIAL DEFENSES AND CERTIFICATE OF SERVICE

Defendants, by and through their counsel, Wayne County Corporation Counsel, and particularly, Cheryl Yapo, Principal Attorney, and for their Answer to Plaintiff's First Amended Complaint, state the following:

## JURISDICTION and PARTIES

1.     This is an action for sex discrimination (harassment, hostile work environment and retaliation) actionable under the Michigan Elliott-Larsen Civil Rights Act, MCL 27.2101 et seq., First Amendment Retaliation actionable under 42 U.S.C. § 1983, retaliation actionable under the Michigan Whistleblowers' Protection Act, MCL 15.361., and Intentional Infliction of Emotional Distress.

**ANSWER**:

**No contest except Defendants deny that a case or controversy exists that would give rise to such action, and leave Plaintiffs to their proofs.**

2.      All parties reside in Wayne County.

**ANSWER**:

**Defendants neither admit nor deny these allegations because they lack knowledge or information sufficient to form a belief as to the truth of these allegations and leave Plaintiff to her proofs.**

3.      All events giving rise to litigation occurred in Wayne County.

**ANSWER**:

**Defendants deny that any events exist that would give rise to a cause of action, and leave Plaintiff to her proofs.**

4.      **Defendant Dunlap is being sued in his individual and official capacities**.

**ANSWER**:

**Defendants deny that a case or controversy exists that would give rise to an action support a suit against Defendant Dunlap in any capacity and leave Plaintiff to her proofs.**

5.      Defendant Wayne County is a Michigan Municipal Corporation.

**ANSWER**:

**Admitted.**

6.      The Wayne County Sheriff is elected to the position.

**ANSWER**:

   **Admitted.**

7.      The Sheriff's Office is an operational subunit of Wayne County and a paramilitary organization with a $144,143,656.00 operating budget (fiscal year 2015-2016). The Sheriff's Office, alone, employs more than five hundred (500) individuals. Its highest ranking positions, in order of priority, are: Sheriff, Undersheriff, Chief, Deputy Chief. Its lowest ranking position is Deputy.

**ANSWER**:

   **Defendants admit that the Sheriff's Office is operated as a paramilitary organization that has more than five hundred (500) employees, with the highest ranking positions in order of rank are Sheriff, Undersheriff, Chief, Deputy Chief, Commander, Captain, Lieutenant, Sergeant, and Corporal/Police Officer. Defendants neither admit nor deny the remaining allegations and leave Plaintiff to her proofs.**

8.      All parties are Wayne County employees assigned to the Sheriff's Office.

**ANSWER**:

   **Defendants admit Defendant Robert Dunlap is an employee assigned to the Sheriff's Office.**

9.      Lacey L. Polderdyke is a Sheriff's Deputy.

**ANSWER**:

     **Defendants admit Lacey L. Polderdyke is employed in the classification of Police Officer.**

10.     Plaintiff Shelly L. Milton is a Sheriff's Deputy.

**ANSWER**:

     **Defendants admit Shelly L. Milton is employed in the classification of Corporal.**

11.     Michael Turner is the Sheriff's Chief of Staff.

**ANSWER**:

     **Admitted.**

12.     Defendant Robert Dunlap is the Sheriff's Chief of Jails and Courts.

**ANSWER**:

     **Admitted.**

13.     Rafael Washington is the Sheriff's Deputy Chief of Courts.

**ANSWER**:

     **Defendants admit Raphael Washington is the Sheriff's Deputy Chief over Divisions I & II.**

14.     Defendant Robert Dunlap is a Sheriff's Office policy maker with supervisory control over Deputy Milton.   All decisions affecting her as described below were made by Defendant Dunlap, ratified by Sheriff Napoleon and Undersheriff Pfannes.

**ANSWER**:

**Defendants admit that within the paramilitary organization, Defendant Dunlap, Undersheriff Pfannes and Sheriff Napoleon hold a higher rank than Plaintiff.  Defendants deny as untrue that Defendant Dunlap is a policy maker.  Defendants neither admit nor deny the remaining allegations and leave Plaintiff to her proofs.**

## BACKGROUND FACTS

15.     Deputy Milton was hired by Wayne County in 1998.

**ANSWER**:

**Defendants admit Plaintiff Milton was hired as a Police Officer effective January 25, 1999.**

16.     Sheriff Napoleon is a Democrat.   Defendant Dunlap, Raphael Washington and Michael Turner are political appointees.

**ANSWER**:

**Defendants admit Sheriff Napoleon is a Democrat.  Defendants neither admit nor deny whether Defendant Dunlap, Raphael Washington, or Michael Turner are political appointees as that phrase is a term of art, and Defendants leave Plaintiff to her proofs.**

17.     Deputy Milton campaigned to be the elected Wayne County Sheriff more than once. Prior to 2015, she ran as a Republican.   In 2015, she switched political parties and became a Democrat.   After that, she campaigned for Sheriff on the Democratic ticket—along with Sheriff Napoleon.

**ANSWER**:

**Defendants admit Plaintiff Milton ran for Sheriff in the 2016 election cycle. Defendants neither admit nor deny the remaining allegations because they lack knowledge or information sufficient to form a belief as to the truth of these allegations and leave Plaintiff to her proofs.**

18.     Sometime in 2015, Deputy Milton saw Sheriff Napoleon at a Sheriff's Office function. Sheriff Napoleon asked Deputy Milton: "Will I be seeing you next November?" [as a candidate for Sheriff in 2016]. She smiled and said: "Yes".

**ANSWER**:

**Admitted.**

19.     After that encounter, Deputy Milton met Defendant Dunlap for first time. They both extended their hands at the same time to shake hands. Deputy Milton said first: "Hi, I'm Shelly Milton". Defendant Dunlap withdrew his hand before shaking hers and said in a menacing tone: "Oh, I know all about *you*!"

**ANSWER**:

**Defendants deny these allegations as untrue.**

20.     For twelve years before she announced she was a Democrat running for Sheriff in direct opposition (i.e., same political party) to Sheriff Napoleon, Deputy Milton had been very active in the Sheriff's Office Training Unit, both administratively and instructing basic and advanced classes to Sheriff employees.

**ANSWER**:

**Defendants neither admit nor deny these allegations because they lack knowledge or information sufficient to form a belief as to the truth of these allegations as stated and leave Plaintiffs to their proofs.**

21.     Prior to becoming a Democrat, the Training Unit Commanding Officer's requests to have Deputy Milton temporarily assigned to the Training Unit for administrative work and/or teaching had never been denied.

**ANSWER**:

**Defendants neither admit nor deny these allegations because they lack knowledge or information sufficient to form a belief as to the truth of these allegations as stated and leave Plaintiffs to their proofs.**

22.     Defendant Dunlap is the Sheriff's Office decision maker when it comes to approving or denying the Training Unit requests for classes and instructors, of course with the Sheriff and Undersheriff having oversight and veto power.

**ANSWER**:

**Admitted.**

23.     After Deputy Milton switched political parties and announced her candidacy on the same "ticket" as Sheriff Napoleon, Defendant Dunlap issued a direct Order to Lieutenant Fredryn Allen (in charge of the Sheriff's Office Training Unit) that Deputy Milton was not to serve as a training officer and was not to assist in any administrative capacity in the Training Unit.

**ANSWER**:

**Defendants neither admit nor deny these allegations because they lack knowledge or information sufficient to form a belief as to the truth of these allegations as stated and leave Plaintiffs to their proofs.**

24.     After Deputy Milton switched political parties, all of Lt. Allen's requests to have Deputy Milton assigned to the Training Unit have been denied.

**ANSWER**:

**Defendants neither admit nor deny these allegations because they lack knowledge or information sufficient to form a belief as to the truth of these allegations as stated and leave Plaintiffs to their proofs.**

25.     Sheriff Napoleon was reelected to Sheriff in 2016.

**ANSWER**:

**Admitted.**

26.     Since the 2016 election ended, Defendant Dunlap continues to deny requests for Deputy Milton to be temporarily assigned to the Training Unit.

**ANSWER**:

**Defendants neither admit nor deny this allegation because any response will assume factual accuracy within the allegation; therefore Defendants leave Plaintiff to her proofs.**

27.     Deputies Polderdyke and Milton are members of the Wayne County Sheriff's Office Honor Guard.

**ANSWER**:

**Defendants neither admit nor deny these allegations and leave Plaintiff to her proofs.**

28.     In 2016, Deputy Polderdyke was the subject of another round of Defendants' discriminatory conduct because of gender.  She was the prior victim of Michael Turner's sex discrimination, who later apologized for his unlawful behavior.

**ANSWER**:

**Defendants deny these allegations as untrue.**

29.     In the spring of 2016, Defendant Dunlap, the Sheriff, Undersheriff [sic] Chiefs and Deputy Chiefs became aware of the fact that Deputy Polderdyke had saved a text message she received from Raphael Washington.  In the message, he offered her a favorable term/condition of employment in exchange for sexual favors.

**ANSWER**:

**Defendants deny these allegations as untrue.**

30.     When Raphael Washington found out she saved the text, he said to her "You need to make it go away", or words to that effect.

**ANSWER**:

    **Defendants deny these allegations as untrue.**

31.    When Deputy Chief [sic] found out she saved the text, he said to her: "Don't do anything stupid with it, we'll take care of you", or words to that effect.

**ANSWER**:

    **Defendants cannot answer this in the form presented as it is vague and incomplete.**

32.    When Undersheriff Pfannes found out she saved the text, it is rumored he spontaneously replied: "That's the third strike for Washington".

**ANSWER**:

    **Defendants deny these allegations as untrue.**

33.    When Defendant Dunlap found out Sheriff Napoleon and Undersheriff Pfannes knew she saved the text, Dunlap chastised the individual whom he thought told the Sheriff by saying: "You should have kept your mouth shut, we were taking care of it", or words to that effect.

**ANSWER**:

    **Defendants deny these allegations as untrue.**

34.    Deputy Polderdyke denied she saved the text, for fear of retaliation.

**ANSWER**:

    **Defendants neither admit nor deny these allegations and leave Plaintiff to her proofs.**

35.     On July 8, 2016, Deputy Polderdyke learned she would be responsible for coordinating slain Dallas Police Officer Michael Kroll's funeral. In preparation, there were several meetings with representatives from public and private agencies.

**ANSWER**:

**Defendants neither admit nor deny these allegations because they lack knowledge or information sufficient to form a belief as to the truth of these allegations and leave Plaintiffs to their proofs.**

36.     Defendant Dunlap and Raphael Washington attended several meetings though they were not involved in the event itself or its planning.

**ANSWER**:

**Defendants admit Chief Dunlap and Deputy Chief Washington attended meetings related to the Honor Guard presence for Police Officer Michael Kroll.  Defendants deny as untrue the remaining allegations.**

37.     At the July 12 and 13, 2016 meetings, Defendant Dunlap ordered Deputy Polderdyke out of her chair (situated across the room) and into a chair in between him and Raphael Washington. Sometimes, Raphael Washington would move his chair so close to Deputy Polderdyke's that they were almost touching. She repeatedly moved away. No other Sheriff's Office representative was ordered to switch seats.  Raphael Washington never sat so close to anyone else.

**ANSWER**:

**Defendants deny these allegations as untrue.**

38.     On July 15, 2016, Defendant Dunlap and Raphael Washington attempted to physical [sic] intimidate Deputy Polerdyke in retaliation for her saving the text message.  Her failure to succumb to that intimidation infuriated Defendant.

**ANSWER**:

**Defendants deny these allegations as untrue.**

39.     After the meeting, Defendant Dunlap and Raphael Washington confronted Deputy Polderdyke in hallway [sic] and began berating her about having a "negative attitude" and not being a "team player".

**ANSWER**:

**Defendants deny these allegations as untrue.**

40.     Several eyewitnesses wrote letters to the Sheriff complaining of the manner in which Defendant Dunlap and Raphael Washington interrupted the preparatory meetings and mistreated Deputy Polderdyke.

**ANSWER**:

**Defendants admit the Sheriff's Office received a letter from Clayton Monte dated July 29, 2016 and a memo dated August 4, 2016 from Eric Moilanen related to Deputy Chief Dunlap.  Defendants deny as untrue the remaining allegations.**

41.     On July 16, 2016, when she arrived for Honor Guard duty, Deputy Polderdyke was advised by a representative of Signature Flight Services that due to Defendant Dunlap's inappropriate, counterproductive and disruptive behavior, he would not be allowed into the Airport

Operations Area (AOA/tarmac) for the arrival of Officer Krol's remains and family or any other funeral detail.

**ANSWER**:

      **Defendants deny as untrue the allegations that Defendant Dunlap was not allowed into the Airport Operations Area (AOA/tarmac) for any reason, and particularly deny that it was due to inappropriate, counterproductive or disruptive behavior by Chief Dunlap.**

      42.     Defendant Dunlap arrived but was shut out of the detail.

**ANSWER**:

      **Defendants deny this allegation as untrue.**

      43.     A short time later, when Deputy Milton arrived for Honor Guard detail, Defendant Dunlap was furious with Deputy Polderdyke for the text, furious with her for making him look so bad (by comparison).  Defendant Dunlap saw Deputy Milton and he was instantly reminded of her switching parties to run directly against the Sheriff, her opposition to the Sheriff's Office's discriminatory/retaliatory practices, her supporting Deputy Polderdyke's saving text messages and more.  Unable to control himself, he made another spectacle of himself by confronting Deputy Milton in the hallway shouting:  "Stand Down!", "Strip out of that uniform!" and more.  He, himself, "stood down" once he realized she was off duty.

**ANSWER**:

      **Defendants admit Chief Dunlap ordered Deputy Milton to "stand down" from the arrival detail because she had not received his authorization to attend.  Defendants deny as untrue the remaining allegations.**

45.     When asked to explain his decisions affecting Deputy Milton and his treatment of her at Signature Flight Services, Defendant Dunlap is rumored to have said:   "Don't you understand?  She's running *against **us**!*".

**ANSWER**:

**Defendants neither admit nor deny these allegations because they are allegations based on rumors and Defendants leave Plaintiff to her proofs.**

46.     Defendant's conduct alleged herein has always been intentional.

**ANSWER**:

**Plaintiff makes a conclusion of law rather than an allegation of fact, therefore no response is required and Defendants leave Plaintiff to her proofs.**

47.     Defendants routinely discriminate against Sheriff's Office employees because of sex, engage in sexual harassment, and verbal/physical conduct or communications of a sexual nature under unlawful circumstances.

**ANSWER**:

**Defendants deny these allegations as untrue.**

48.     Defendants routinely deprive Sheriff Office employees of rights under the First Amendment to the United States Constitution.

**ANSWER**:

**Defendants deny these allegations as untrue.**

49.     Sheriff Office employees who report or oppose Defendants' unlawful conduct are retaliated against.  Those who support or conceal it are rewarded.

**ANSWER**:

**Defendants deny these allegations as untrue.**

50.     On July 20, 2016, Deputy Milton filed an internal complaint with Wayne County Human Resources regarding Defendants' treatment of her.  No one from the Personnel Department, the Sheriff's Office, or Corporation Counsel did *anything* to investigate her complaint.

**ANSWER**:

**Defendants admit Plaintiff Milton submitted a harassment complaint dated July 20, 2016.  Defendants deny as untrue the remaining allegations.**

51.     After her complaint sat dormant for months, Deputy Milton retained the undersigned attorney who sent notice to Wayne County Corporation Counsel and Sheriff Napoleon of Deputy Milton's intent to pursue a claim and/or cause of action for discrimination and retaliation.

**ANSWER**:

**Defendants admit a letter dated August 19, 2016, addressed to Corporation Counsel and Sheriff Napoleon, sent by Karie Boylan, Esq., was received.  Defendants neither admit nor deny the remaining allegations and leave Plaintiff to her proofs.**

52.     Defendants responded by sending Deputy Milton notice she was to report to a private attorney's office and be interviewed by him.  She was advised in no uncertain terms that she would be fired if she did not answer all of his questions.  The notice purported to give the attorney full authority as if he were the Sheriff.

**ANSWER**:

**Defendants admit that Avery Williams, Esq., conducted an investigation into allegations made by Plaintiff.  Defendants deny as untrue the allegation that Plaintiff Milton would be fired if she did not answer all of his questions.  Defendants neither admit nor deny the remaining allegations and leave Plaintiff to her proofs.**

53.     At the beginning of the attorney's interview, he read her "Garrity Rights", which meant she was being investigated and not the Defendants.

**ANSWER**:

**Defendants admit Garrity Rights were read to Plaintiff Milton at the beginning of her interview with Avery Williams, Esq.  Defendants neither admit nor deny the remaining allegation and leave Plaintiff to her proofs.**

### Michigan Elliot-Larsen Civil Rights Act, MCL 37.2101 et seq
### Count I: Hostile Environment Harassment
### Count II: Retaliatory Harassment

54.     Plaintiff incorporates the preceding paragraphs by reference.

**ANSWER**:

**Defendants incorporate by reference paragraphs 1-53.**

55.     Plaintiff was an employee, and Defendants were employers, covered by and within the meaning of the Michigan Elliot-Larsen Civil Rights Act, MCL 37.2101 et seq.

 **ANSWER**:

**Plaintiff makes conclusions of law rather than allegations of fact, therefore no response is required and Defendants leave Plaintiff to her proofs.**

56.     Submission to discriminatory conduct or communication is a term or condition of employment in the Wayne County Sheriff's Office.

**ANSWER**:

**Defendants deny this allegation as untrue.**

57.     Submission to/rejection of discriminatory conduct has the purpose or effect of substantially interfering with an individual's employment in the Wayne County Sheriff's Office.

**ANSWER**:

**Defendants deny these allegations as untrue.**

58.     The discriminatory conduct or communication has the purpose or effect of substantially interfering with an individual's employment in the Wayne County Sheriff's Office.

**ANSWER**:

**Defendants deny this allegation as untrue.**

59.     Defendants are aware of the fact that Deputy Milton has consistently opposed Defendants' discriminatory and retaliatory harassment of female Sheriff's Office employees, including, but not limited to Deputy Polderdyke.

**ANSWER**:

**Defendants deny these allegations as untrue.**

60.     Defendant Dunlap's motive, in whole or in part, for confronting Deputy Milton on July 16, 2016, was because of gender and in retaliation for her opposition of the Sheriff Office's discriminatory and retaliatory practices, including her support of Deputy Polderdyke.

**ANSWER**:

**Defendants deny these allegations as untrue.**

61.     Defendants' motive in retaining a private attorney, sending Deputy Milton notice in the manner in which it was phrased, threatening her with termination, reading her Garritty Rights before questioning began, and the manner in which the interview was conducted constitutes retaliation and was specifically designed to intimidate her into backing down/withdrawing her complaint to Human Resources and support of Deputy Polderdyke.

**ANSWER**:

**Defendants deny these allegations as untrue.**

63.     As a direct and proximate result of the Defendants' unlawful actions against Deputy Milton as described, Deputy Milton suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and

esteem in the community; mental and emotional distress; pain and suffering; loss of ordinary pleasures of life; costs of litigation, including costs, attorney fees and witness fees.

**ANSWER**:

> **Defendants deny these allegations as untrue.**

### Count III-Whistleblowers' Protection Act, MCL 15.36 et seq

64.     Plaintiffs incorporate the preceding paragraphs by reference.

**ANSWER**:

> **Defendants incorporate by reference paragraphs 1-63.**

65.     Plaintiff was an employee, and Defendants were employees, covered by and within the meaning of the Whistleblowers' Protection Act, MCL 15.361 et seq.

**ANSWER**:

> **Plaintiff makes conclusions of law rather than allegations of fact, therefore no response is required and Defendants leave Plaintiff to her proofs.**

66.     On July 20, 2016, Deputy Milton reported, in writing, a violation or suspected violation of a law or regulation or rule promulgated pursuant to law of this state, of Wayne County, and of the United States to a public body.

**ANSWER**:

> **Defendants admit Plaintiff Milton submitted a harassment complaint dated July 20, 2106.  As to the remaining allegations, Plaintiff makes a conclusion of law rather than an**

allegation of fact, therefore no response is required and Defendants leave Plaintiff to her proofs.

67.    Defendants did nothing to investigate her complaint.

**ANSWER**:

**Defendants deny this allegation as untrue.**

68.    On September 19th, 2016, the undersigned attorney sent notice and retention/reservation letters to Wayne County Corporation Counsel and Sheriff [sic]

**ANSWER**:

**Admitted.**

69.    Defendants' motive in retaining a private attorney, sending Deputy Milton notice in the manner in which it was phrased, threatening her with termination, reading her Garritty Rights before questioning began, and, the manner in which the interview was conducted constitutes discrimination and retaliation in violation of Michigan's WPA.

**ANSWER**:

**Defendants deny these allegations as untrue.**

70.    As a direct and proximate result of the Defendants unlawful actions against Deputy Milton as described, Deputy Milton suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and

esteem in the community; mental and emotional distress; pain and suffering; loss of ordinary pleasures of life; costs of litigation, including cots, attorney fees and witness fees.

**ANSWER**:

> **Defendants deny these allegations as untrue.**

### Count IV- First Amendment Retaliation (42 U.S.C. 1983)

71.     The preceding paragraphs are incorporated by reference.

**ANSWER**:

> **Defendants incorporate by reference paragraphs 1-70.**

72.     Political party affiliation is an expression of political beliefs, expression of those beliefs and, obviously, political affiliation.  They are fundamental rights protected by the First Amendment to the United States Constitution.

**ANSWER**:

> **Plaintiff makes conclusions of law rather than allegations of fact, therefore no response is required and Defendants leave Plaintiff to her proofs.**

73.     Changing political parties; opposing discriminatory and retaliatory employment practices; speaking on matter of public concern is protected conduct; reporting violations or suspected  violations of law is protected conduct; being denied opportunities to participate in training exercises and assist with administrative tasks in the Wayne County Sheriff Office's Training Unit; being publicly humiliated and yelled at in front of others during a solemn funeral detail; and

being threatened with termination in a notice to appear for an investigation into matters reported by the subject of the investigation, being read "Garrity rights" at the beginning of an interview that interviewee requested, being threatened with termination for failure to answer any and all questions posed by a civilian as if he were the Sheriff, and being subject to an intimidating interview constitute adverse actions.

**ANSWER**:

**Plaintiff makes conclusions of law rather than allegations of fact, therefore no response is required and Defendants leave Plaintiff to her proofs.**

74.    Deputy Milton's participation in protected conduct were [sic] substantial or motivating factors behind the adverse actions taken against her.

**ANSWER**:

**Defendants deny these allegations as untrue.**

75.    Defendants were acting under color of law at all relevant times and abused their authority.

**ANSWER**:

**Defendants deny these allegations as untrue.**

76.    The individual Defendants' conduct violated clearly established statutory and/or constitutional rights of which a reasonable person would have known.  They are either plainly incompetent or knowingly violated the law.

**ANSWER**:

**Defendants deny these allegations as untrue.**

77.     The individual Defendants are not entitled to qualified immunity.

**ANSWER**:

**Plaintiff makes conclusions of law rather than allegations of fact, therefore no response is required and Defendants leave Plaintiff to her proofs.**

78.     Wayne County is a "person" within the meaning of 42 U.S.C § 1983.

**ANSWER**:

**Plaintiff makes conclusions of law rather than allegations of fact, therefore no response is required and Defendants leave Plaintiff to her proofs.**

79.     The adverse actions taken against Deputy Milton were expressions of the official policy of Defendant Wayne County and the moving force behind the First Amendment deprivations she suffered.

**ANSWER**:

**Defendants deny these allegations as untrue.**

80.     In his official capacity, Sheriff Napoleon's failure to discipline/supervise Defendant Dunlap, and ratification of their [sic] unconstitutional conduct as outlined above constitutes ratification and Wayne County's official policy.

**ANSWER**:

**Defendants deny these allegations as untrue.**

81.     Defendants' conduct is actionable under 42 U.S.C. § 1983.

**ANSWER**:

**Defendants deny these allegations as untrue.**

82.     Plaintiff is entitled to attorney/expert fees under 42 U.S.C. § 1983.

**ANSWER**:

**Defendants deny these allegations as untrue.**

83.     As a direct and proximate result of Defendants', individually and collectively, unconstitutional conduct, Deputy Milton suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and esteem in the community; mental and emotional distress; pain and suffering; loss of ordinary pleasures of life; costs of litigation, including cots, attorney fees and witness fees.

**ANSWER**:

**Defendants deny these allegations as untrue.**

**Count V: Intentional Infliction of Emotional Distress**

84.     The preceding paragraphs are incorporated by reference.

**ANSWER**:

**Defendants incorporate by reference paragraphs 1-83.**

85.     Defendant Dunlap's conduct and interactions with Deputy Milton was intentional and resulted in her suffering extreme emotional distress.

**ANSWER**:

**Defendants deny these allegations as untrue.**

86.    The conduct was extreme and outrageous, not to be tolerated in a civilized society. So much so on July 16, 2016, that he was escorted off the property by uniformed law enforcement officers.

**ANSWER**:

**Defendants deny these allegations as untrue.**

87.    As a direct and proximate result of Defendant Dunlap's conduct, Deputy Milton suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity; loss of career opportunities; loss of reputation and esteem in the community; mental and emotional distress; pain and suffering; loss of ordinary pleasures of life; costs of litigation, including cots, attorney fees and witness fees.

**ANSWER**:

**Defendants deny these allegations as untrue.**

**WHEREFORE DEFENDANTS** respectfully request this Honorable Court dismiss Plaintiffs' Complaint in its entirety and award Defendants any and all relief this Court deems just and equitable.

Respectfully submitted,

**WAYNE COUNTY CORPORATION COUNSEL**

By:   /s/***Cheryl Yapo***
        CHERYL YAPO (P55682)
        Principal Attorney
        Attorneys for Defendants
        500 Griswold, 30th Floor
        Detroit, MI 48226
        313.224.8719 Office/313.224.4882 Fax
        cyapo@waynecounty.com

Dated:  March 16, 2017

## <u>DEFENDANTS NOTICE OF AFFIRMATIVE AND<br>OTHER SPECIAL DEFENSES</u>

DEFENDANTS provide notice that they will rely upon the following defenses if applicable following an opportunity to take reasonable discovery:

1.     Plaintiff's claims are barred in whole or in part by the statute of limitations.

2.     Plaintiff's claims are barred in whole or in part by governmental, absolute, or qualified immunity.

3.     Plaintiff's claims are barred because she failed to timely exhaust contractual remedies.

4.     Plaintiff's claims are barred because she failed to timely exhaust administrative remedies.

5.     Plaintiff's claims are barred for lack of subject matter jurisdiction.

6.     Plaintiff's claims are barred because she failed to mitigate her damages.

7.     Plaintiff's damages are barred by her own actions or omissions.

8.     Plaintiff's claims are barred in whole or in part by a contractual limitation period and/or she failed to timely pursue her claims in this case.

DEFENDANTS reserve the right to amend these Affirmative Defenses as others become known through the course of discovery and trial.

**WAYNE COUNTY CORPORATION COUNSEL**

By:   /s/***Cheryl Yapo***
CHERYL YAPO (P55682)
Principal Attorney
Attorney for Defendant Wayne County
500 Griswold, 30th Floor
Detroit, MI 48226
313.224.8719 Office/313.224.4882 Fax
cyapo@waynecounty.com

Dated:  March 16, 2017

#312005

## <u>CERTIFICATION OF SERVICE</u>

I certify that on March 16, 2017, I electronically filed the foregoing documents with the Clerk of the Court using the ECF filing system, which will send notification of such filing to All Counsel of Record.

**_/s/Mark Bossuah_**
Assistant to Cheryl Yapo
500 Griswold, 30th Floor
Detroit, MI 48226
313.967.1007
mbussuah@waynecounty.com

#312005